IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CASSANDRA M. LONDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-00654-CV-W-BP-SSA |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's decision denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff Cassandra London was born on June 18, 1970 and has a high school education. (R. at 23.) On July 14, 2015, Plaintiff filed an application for DIB, and on August 3, 2015, she filed an application for SSI, alleging in both applications that she became disabled on February 28, 2012. (R. at 356, 358.) Prior to her alleged onset date, Plaintiff had worked as a convenience store clerk and grocery store cashier. (R. at 23.)

Plaintiff's applications were initially denied, (R. at 204), and she appealed that decision to an Administrative Law Judge ("ALJ"). The ALJ found that Plaintiff was not disabled. (R. at 184.) Plaintiff then appealed that decision to the Appeals Council, which remanded the case to another

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of Social Security during the pendency of this case and is automatically substituted as the Defendant pursuant to FED. R. CIV. P. 25(d).

ALJ for further consideration of the effect of Plaintiff's obesity on her Residual Functional Capacity ("RFC"). (R. at 13.)[2]

After holding a hearing, the ALJ found that Plaintiff suffers from osteoarthritis in the bilateral knees, sacroiliitis in the right hip, degenerative disc disease, obesity, depression, anxiety, obsessive-compulsive disorder, agoraphobia, personality disorder, and post-traumatic stress disorder. (R. at 16.) However, the ALJ found that these ailments were not medically equal in severity to one of the listed impairments in 20 C.F.R. Part 404. (R. at 17.) The ALJ then turned to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that, due to Plaintiff's physical ailments, she could perform sedentary work, except that she can lift and carry five pounds frequently and ten pounds occasionally. (R. at 18.) The ALJ further found that Plaintiff can sit up to six hours and stand or walk up to two hours per workday, must avoid ladders, vibration, and unprotected heights, and can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. (*Id*.) Due to Plaintiff's mental impairments, the ALJ found that Plaintiff can follow simple instructions and perform routine tasks, and occasionally interact with coworkers and supervisors, but must never interact with the general public. (*Id*.)

In light of these limitations, the ALJ found that Plaintiff could not return to her past work, (R. at 23), but could work at several jobs that exist in significant numbers in the national economy, including a lens inserter, wire wrapper, and sealer. (R. at 24.) Consequently, the ALJ found that Plaintiff was not disabled. (*Id*.)

Plaintiff has now appealed the ALJ's determination that she was not disabled, arguing that it was not supported by substantial evidence. The Commissioner opposes Plaintiff's appeal. The Court resolves these issues below.

---

[2] The Court will refer to the ALJ whose decision Plaintiff has appealed to this Court as "the ALJ," as the findings of the first ALJ are irrelevant except to establish the procedural history of Plaintiff's case.

## II. DISCUSSION

The Court has a limited ability to revisit the conclusions of an ALJ. Specifically, "review of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Although the substantial evidence standard is favorable to the Commissioner, it requires the Court to consider evidence that fairly detracts from the Commissioner's decision. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). But if the Court finds substantial evidence to support the Commissioner's decision, it cannot reverse the decision simply because there is also substantial evidence that might have supported the opposite outcome. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). With these principles in mind, the Court addresses each of Plaintiff's arguments in turn to determine whether they show that the Commissioner's decision was not supported by substantial evidence.

**1. Plaintiff's Physical Limitations**

Plaintiff raises a variety of arguments to contest the ALJ's determination of her physical limitations, none of which are availing. She contends that the ALJ erred in assigning significant weight to the opinion of Dorothy Leong, M.D., a non-examining state agency physician. (Doc. 12, pp. 33–37.) In May of 2017, Dr. Leong evaluated Plaintiff's medical records across several years to determine the effect of Plaintiff's ailments on her physical capacity, and opined that Plaintiff can frequently lift five pounds and sit for six hours and stand or walk for one hour per workday. (R. at 1063–73.)[3]

---

[3] In her discussion of Dr. Leong's opinion, Plaintiff claims that Dr. Leong left blank a section asking her to identify particular medical findings to support some of her conclusions. (Doc. 12, p. 35; R. at 1063.) While Dr. Leong did not identify specific findings in that section, her report concludes with a detailed and exhaustive review of Plaintiff's medical records, which is more than sufficient to support her conclusions. (R. at 1072–73.)

Relatedly, Plaintiff argues that the ALJ erred in assigning only partial weight to the opinion of David Dyck, D.O. (Doc. 12, p. 37.) Dr. Dyck, who examined Plaintiff, found that she could never stoop, crouch, or crawl, needed to shift positions at will throughout the workday, would take three or four unscheduled breaks each workday, would be off-task 25% of the time, and would have "bad days" preventing her from working more than four days per month. (R. at 799–801.) The ALJ found that the objective medical evidence in the record did not fully support Dr. Dyck's opinion. (R. at 22.)

Thus, Plaintiff's arguments with respect to Drs. Leong and Dyck are interrelated: she contends that the ALJ erred in assigning greater weight to Dr. Leong's opinion because (1) Dr. Dyck personally examined Plaintiff and Dr. Leong did not, (2) the ALJ failed to adequately explain the choice to reject some of the restrictions Dr. Dyck indicated, (3) the medical evidence generally supported Dr. Dyck's more restrictive opinion, and (4) Dr. Leong assessed Plaintiff several years before the ALJ heard the case. (Doc. 12, pp. 35–39.)

The Court disagrees. "[T]he determination of a claimant's RFC at the administrative hearing level is the responsibility of the ALJ alone and is distinct from a medical source's opinion," and the ALJ can identify the limitations in the RFC by "[v]iewing the record as a whole." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citing 20 C.F.R. § 404.1546(c)). "Although a treating physician's opinion is often given controlling weight, such deference is not appropriate when the opinion is inconsistent with the other substantial evidence." *Ponder v. Colvin*, 770 F.3d 1190, 1194 (8th Cir. 2014). Thus, an ALJ may properly give greater weight to a non-treating physician's opinion when it is more consistent with the record as a whole. *Id*. at 1195. For example, an ALJ may discount a treating physician's opinion "and [] rely instead on the opinions of [] medical

consultants" if they are "more consistent with the medical evidence." *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017).

Substantial evidence in the Record supports the ALJ's decision to assign greater weight to Dr. Leong's opinion than Dr. Dyck's. Plaintiff's physical examinations were mostly normal and her ailments largely controlled through treatment throughout the period of her alleged disability.[4] In 2019, Plaintiff reported that her hip pain had improved significantly—so much so that she couldn't "guide the doctor with where to put the injection" of pain medication. (R. at 1385.) A physical examination from 2018 found Plaintiff's musculoskeletal system "[o]verall . . . normal," with no acute distress. (R. at 1102.) Medical imaging from 2017 found that Plaintiff had "[v]ery mild superior lateral hip joint space narrowing," but did not find any "fracture or dislocation," and found Plaintiff's hip generally "unremarkable." (R. at 1076.) Medical imaging of Plaintiff's back found that she had "minimal" and "mild" disc bulging in places, but "[n]o significant spinal or neuroforaminal stenosis," (R. at 989); consequently, Plaintiff has experienced significant improvement to her lower-back pain due to her regimen of pain medication. (R. at 1005.)[5] Plaintiff's joints of her lower extremities "showed no swelling, tenderness, effusion or gross deformity" at a physical examination in 2015, and she was able to squat, stand up, climb on and off the exam table, walk in tandem, and hop on one foot without difficulty. (R. at 633.)[6] Moreover, Plaintiff continued to work—albeit not at the level of substantial gainful activity—and does not

---

[4] Much of this supporting evidence derives from after Dr. Leong issued her opinion, which addresses Plaintiff's concern that Dr. Leong did not have the benefit of Plaintiff's full medical records when she issued her opinion in 2017. (*See* Doc. 12, p. 34.)

[5] Plaintiff asserts that the pain medicine injections were only temporarily effective, and points to an examination in 2016 in which she complained of ongoing pain despite her pain medicine. (Doc. 12, p. 43; R. at 1024.) However, this examination preceded Plaintiff's considerable weight loss, which significantly relieved her joint pain. (R. at 41–42.)

[6] The fact that Plaintiff could in fact perform these tasks without difficulty addresses Plaintiff's argument that the ALJ should have included narrower restrictions on Plaintiff's ability to crawl, stoop, and balance. (Doc. 12, p. 36.)

5

miss as many days per month as Dr. Dyck indicated. (R. at 40.) Finally, Plaintiff herself testified that her obesity has improved considerably since she had bariatric sleeve surgery, which has relieved many of the problems with her back and knees. (R. at 41–42.)

All of this evidence tends to undermine Dr. Dyck's conclusions that Plaintiff can never stoop, crouch, or crawl due to her ailments, that she would need frequent unscheduled breaks and days off, and that she could not remain on-task; it also tends to support the lesser restrictions Dr. Leong suggested. At best, Plaintiff has pointed to conflicting evidence in the record. And "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009) (citation omitted). Because substantial evidence supported the ALJ's opinion to assign significant weight to Dr. Leong's opinion and only partial weight to Dr. Dyck's opinion, and because Dr. Leong's opinion—coupled with the ample evidence in the rest of the Record—is substantial evidence to support the ALJ's determination of Plaintiff's physical limitations, Plaintiff is not entitled to reversal on this ground.

2. **Plaintiff's Mental Limitations**

Plaintiff next argues that the ALJ's RFC as to her mental limitations is unsupported by substantial evidence. (Doc. 12, p. 39.) The ALJ assigned only partial weight to the opinion of Keith Allen, Ph.D. (R. at 22.) In 2015, Dr. Allen prepared a report opining that Plaintiff had "Moderate" difficulties in social interactions and "Moderate" difficulties in maintaining concentration, persistence, or pace, but was overall mentally functional. (R. at 145–46.)[7]

Plaintiff argues that Dr. Allen's report significantly predates the ALJ's decision, and does not account for more recent evidence of her mental difficulties. (Doc. 12, p. 40.) But the Court

---

[7] Dr. Allen submitted one report for each of Plaintiff's benefits applications, so there are two identical reports in the record. (R. at 154.)

finds that the evidence as a whole—including the evidence that post-dates Dr. Allen's report—supports the ALJ's finding that Plaintiff's mental impairments are not disabling. A mental status exam from October 2015 found that Plaintiff reported being in a "good" mood, with fair judgment and insight, no risk of suicide, appropriate speech and eye contact, and generally unremarkable findings. (R. at 960.) A year later, in 2016, Plaintiff reported that she was working part time, "doing great," and that her medication for her mental issues was "effective." (R. at 826.) Plaintiff began attending therapy, and at a 2019 appointment, reported that her medication for her mental issues was working. (R. at 1377.) In fact, at repeated appointments with her therapist, Plaintiff reported that she was doing well with her mental issues, and the therapist often described her as pleasant and cheerful and found her mood grossly normal. (*E.g.,* R. at 1506, 1504, 1500, 1499, 1454, 1471.)[8] The ALJ also pointed to Plaintiff's own activities to support the conclusion that Plaintiff's mental symptoms are not as extreme as Plaintiff claimed. For instance, Plaintiff regularly volunteered at her local mission, (R. at 1447), and continued to work part-time through the period of her alleged disability. (R. at 40.) Given all this, coupled with Dr. Allen's report, the Court finds that substantial evidence supported the ALJ's determinations as to Plaintiff's mental RFC.

Plaintiff also contends that the ALJ owed a duty to develop the record on Plaintiff's mental abilities by requesting a more recent mental evaluation. (Doc. 12, p. 41.) The Court disagrees. "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th

---

[8] Much of this evidence comes from after Dr. Allen authored his report and generally confirms his findings; this addresses Plaintiff's concern that Dr. Allen did not have the full span of Plaintiff's medical records to review.

7

Cir. 2011) (internal citation omitted). Because the record as a whole—including Dr. Allen's report and the other medical evidence—supports the ALJ's determination as to Plaintiff's mental capacities, there was no need for the ALJ to further develop the record.

Finally, Plaintiff argues that the ALJ failed to consider the opinion of Dr. Bucklew, a non-examining, non-treating state agency physician. (Doc. 12, p. 41.) Dr. Bucklew opined that Plaintiff was "[m]oderately limited" in the ability to understand, remember, and carry out detailed instructions. (R. at 119.) Dr. Bucklew did not indicate that Plaintiff had any limitations in understanding, remembering, and carrying out simple instructions. (*Id*.) While the ALJ did not mention Dr. Bucklew's opinion directly, he did include a limitation in Plaintiff's RFC that she can follow only "simple instructions and perform simple, routine tasks," (R. at 18), which appears to encompass the restriction Dr. Bucklew identified. Thus, the ALJ's failure to mention Dr. Bucklew by name was, at worst, harmless error and not a basis for reversal.[9]

## III. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's determination of Plaintiff's RFC. Consequently, the Commissioner's final decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
**DATE**: August 30, 2021    UNITED STATES DISTRICT COURT

---

[9] Because the Court finds that the ALJ's RFC determination was supported by substantial evidence, it rejects Plaintiff's argument that the ALJ's reliance on the RFC caused the Vocational Expert to testify inaccurately about Plaintiff's ability to work. (Doc. 12, p. 42.)